IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FRANCIS STONE

      Plaintiff,

v.                                          Case No.  1:11-cv-204-MP-GRJ

MARTHA HUMPHRIES, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion For Summary Judgment.  Doc. 76.  Plaintiff filed a Response, Doc. 82, and the motion is otherwise ripe for consideration.[1]  For the reasons discussed below, the Court concludes that Defendants' Motion for Summary Judgment is due to be granted.

### I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a prisoner in the Florida Department of Corrections (FDOC).  Doc. 1 at 5.  Throughout his incarceration Plaintiff alleges that he has remained a "member in good standing" of the Hell's Angels Motorcycle Club ("Hell's Angels").  *Id.* at 7.  While at Mayo Correctional Institute (MCI), Plaintiff claims numerous pieces of his mail were improperly held and returned to their senders.  Doc. 1. at 7-12.

Plaintiff claims in his complaint that the following mail was held and returned to

---

[1] Withe the Court's permission Defendant also filed a supplemental declaration of Micelle Jordan. Doc. 88. Plaintiff has filed a motion to strike the declaration, Doc. 90. Because the Court considered the declaration and afforded Plaintiff with an opportunity to respond to the declaration, Plaintiff's motion to strike is due to be denied, as set forth in a separate order entered this same date.

sender:

    (1) October 12, 2009, mail from Hells Angels in Arcarp, Sweden.

    (2) October 29, 2009, mail from Giovanni Rossetti in Miramar, Florida.

    (3) November 12, 2009, mail from "Mr. Hamclew" in London, England.

    (4) On an unspecified date, mail from Izzy Wildheart.

    (5) December 8, 2009, and January 1, 2010, mail from Kent Sjoblom in Zimhamn, Sweden.

    (6) December 15, 2009, legal mail from Frances Huey in Sacramento, California.

    (7) December 15, 2009, mail from Myles Neiman in Chatsworth, California.

    (8) From December 16 to December 30, 2009, approximately twenty Christmas cards from around the world

    (9) January 1, 2010, mail from Kent Sjoblom in Limhamm, Sweden.

    (10) April 20, 2010, mail from Ray Bakon in Rockhill, South Carolina.

    (11) June 21, 2010, mail from "legal services" in Phoenix, Arizona.

Plaintiff asserts that prison staff informed him that all of these pieces of mail were held because they were gang-related.  Doc. 40 at 3.  Plaintiff argues that this determination was erroneous because at least three of the corespondents - Giovanni Rossetti, Izzy Wildheart, and Francis Huey - were not affiliated with Hell's Angels.  *Id.*  He also avers that Hell's Angels is not a criminal organization, and that there is no reasonable justification for a total ban on the receipt of Hel'ls Angels-related mail.  *Id.*

Plaintiff argues that Defendants[2] violated his First Amendment rights to freedom of speech and freedom of expression, as well as his Fourteenth Amendment right to due process. *Id.* Plaintiff seeks declaratory relief, as well as a permanent injunction compelling Defendants to cease their classification of Hell's Angels as a "gang" and compelling Defendants to cease confiscation of Plaintiff's mail. *Id.* Plaintiff also seeks his costs in bringing this action. *Id.*

On April 30, 2012 Defendants filed a motion to Dismiss the complaint. Doc. 27. The Court issued an order granting in part and denying in part that motion on October 18, 2013. Doc. 47. The Court dismissed with prejudice the claims involving mail clearly identified as being sent from Hell's Angels because the prison's policy of rejecting such mail was reasonably related to legitimate penological interests. *Id.* at 2. However, Plaintiff's claims regarding mail from Mr. Hamclew, Kent Sjoblom, Myles Neiman, and Ray Bakon, as well as claims regarding the Christmas cards from 2009, were dismissed without prejudice to Plaintiff filing an amended complaint stating whether their correspondence was gang related. *Id.* Plaintiff's claims regarding mail from Giovanni Rossetti, Izzy Wildheart, and Francis Huey were also allowed to go forward as they were explicitly described as not being related to a gang or criminal organization. *Id.* at 3.

Plaintiff filed a second amended complaint on June 11, 2013, which is now the

---

[2] The named Defendants are: Martha Humphries, a former Warden at MCI; Rodney Tomlinson, also a former Warden at MCI; Brandy Dewey, a mailroom clerk at MCI; Michael Roberts, the Security Threat Group Officer at MCI; and Kenneth Tucker, the Secretary of the Florida Department of Corrections. Michael Crews is now the Secretary of the Department of Corrections and should be substituted as the correct party.

operative complaint. Doc. 52.  In his Second Amended Complaint Plaintiff deleted his claims related to mail, which were identified as having been sent from Hell's Angels, and pursued the claims regarding mail from Giovanni Rossetti, Izzy Wildheart, Francis Huey, and Myles Neiman, as well as the 20-plus Christmas cards from 2009.  Plaintiff did not pursue his claims against Mr. Hamclew, Kent Sjoblom, or Ray Bakon in his second amended complaint.   In response to Plaintiff's second amended complaint, Defendants filed a motion to dismiss for failure to state a claim on July 5, 2013, arguing that Plaintiff incorrectly labeled his claims as a "state law claim of negligence."  Doc. 55.  The motion was denied on September 27, 2013, as the Court held that mislabeling did not justify dismissing the claim.  Doc. 59.  Defendants now move for summary judgment.  Doc. 76.

## II. STANDARD OF REVIEW

### A.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is

successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment." *Beard v. Banks,* 548 U.S. 521, 530 (2006). "In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage. *Id.* (citation omitted). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.,* 276 F.3d 1275, 1279 (11th Cir. 2001).

## B. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. 42 U.S.C. § 1997e(a) (2013). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural default component: Prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating . . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code provides an administrative remedy process for inmates of facilities within the Florida Department of Corrections. Inmates are to initiate the process by submitting an informal grievance to the relevant staff member. Fla. Admin. Code. R. 33-103.005(1)-(1)(a) (2008). If the inmate is dissatisfied with the response to his informal grievance, he may submit a formal grievance at the institution or facility level within 15 days of the response to the informal grievance. *Id.* at 33-103.006(1); 33-103.011(b). Some grievances, including those regarding the return of incoming routine mail, may be filed directly at the formal level, bypassing the informal grievance process. *Id.* at 33-103.005(1). Finally, if the inmate still feels the issue has been unsatisfactorily resolved at the formal level, he can file an appeal with the Office of the Secretary within 15 days of the response to the formal grievance. *Id.* at 33-103.007(1); 33-103.011(c).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is

considered a matter in abatement rather than an adjudication on the merits. Therefore, this defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich,* 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir.1988). Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008)*.* The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true." *Id.* at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*

### III. DISCUSSION

**A.    *Plaintiff failed to exhaust rejection of his mail, other than the October, 29, 2009 mail from Giovanni Rossetti.***

Plaintiff has failed to exhaust his administrative remedies for all of the mail related incidents in his second amended complaint as required by the PLRA except for mail from Giovanni Rossetti. Plaintiff's second amended complaint alleges that mail from Giovanni Rossetti, Izzy Wildheart, Francis Huey, and Myles Neiman, as well as the 20-plus Christmas cards from 2009, were improperly rejected. Plaintiff states in his second complaint that these claims are fully exhausted, as he filed a formal grievance on November 6, 2009 and a subsequent appeal to the Office of the Secretary on

*Case No: 1:11-cv-204-MP -GRJ*

December 8, 2009.  Doc. 52 at 4.

An examination, however, of Plaintiff's grievance record shows that the grievances filed on November 6, 2009 and December 8, 2009 were in response to the withheld mail from Giovanni Rossetti on October 29, 2009 and not any other specific mail, which Plaintiff contends was unlawfully withheld.  Doc. 76-5.  In the formal grievance filed on November 6, 2009, Plaintiff wrote: "I am filing this formal grievance . . . concerning the rejection of my mail on October 29, 2009."  *Id.* at 10.  This formal grievance was labeled grievance log number 0911-212-013.  *Id.*  Plaintiff's appeal on December 8, 2009 also pertained to the mail rejected on October 29, 2009, as Plaintiff wrote: "As a proper remedy for appeal, I'm appealing the institution's denial of my formal grievance log # 0911-212-013."  *Id.* at 2.  Plaintiff does not allege that any other mail besides the letter from Giovanni Rossetti was rejected on October 29, 2009.  Doc. 1. at 7-12.

Defendants assert that although Plaintiff filed three other grievances/ appeals while at Mayo CI – in addition to the grievance concerning the Rossetti October 22, 2009 letter –  these grievances do not evidence that Plaintiff properly exhausted other claims because these grievances were filed and completed after Plaintiff filed this lawsuit. Doc. 76, p. 9.  A review of the docket discloses, however, that the lawsuit in this case was filed on September 27, 2011 and was handed to prison officials for mailing on September 26, 2011, and not, as Defendants state, on August 26, 2011.[3]  As such, Defendants' assertion that grievances filed after August 26, 2011 are not timely is

---

[3] Defendants mistakenly state that "August 26, 2011, is when Plaintiff turned over the initial Complaint in this case for mailing and was thus 'filed' pursuant to the mailbox rule." Doc. 76, p. 7, n. 3.

*Case No: 1:11-cv-204-MP -GRJ*

inaccurate. Grievances filed and completed on or before September 26, 2011 would count.

A review of the grievance log, Doc. 76-4, Ex. E, discloses that Plaintiff filed and completed three other grievances between August 26, 2011 but before September 26, 2011. These three grievances are case numbers: (1) 11-6-25056, filed on August 17, 2011 and denied on August 26, 2011; (2) 11-6-27124, filed on September 6, 2011 and denied on September 15, 2011; and (3) 11-6-27259, filed on September 8, 20111 and denied on September 13, 2011. Doc. 76-9, Exs. E, H, I & J.

Although Defendants incorrectly conclude that these grievances do not demonstrate proper exhaustion because they were filed and completed after the Second Amended Complaint was filed, these grievances, nonetheless, do not demonstrate proper exhaustion because the grievances were not filed within 15 days of the rejection of the correspondence by prison officials.

With regard to the December 15, 2009 letter from Francis Huey, the December 15, 2009 letter from Myles Neiman and the 2009 Christmas cards, Plaintiff was required to grieve the withholding of these letters and cards within 15 days of notice of the mail rejection. Rule 33-210.101(14)(c).[4]  Thus, Plaintiff was required to file an informal or formal grievance not later than fifteen days after the mail was withheld.  Any grievances challenging the December 15, 2009 letter from Francis Huey or challenging the December 15, 2009 letter from Myles Nieman had to be filed no later than December

---

[4] As mentioned previously, with regard to the return of incoming mail, a prisoner is permitted to skip the informal grievance step and instead file a formal grievance. Rules 33-103.006(3)(g), 33-210.101(14)(c).

*Case No: 1:11-cv-204-MP -GRJ*

30, 2009.

With regard to the Christmas cards – which would have been sent in December 2009 (or at the latest in January 2010) Plaintiff was required to file grievances challenging the withholding of these cards at the latest sometime in January 2010. Consequently, even assuming the three grievances filed in August and September 2011 related to these letters the grievances would be untimely by at least one and half years.

With regard to the letter from Izzy Wildheart, Plaintiff has attached to his response a copy of an affidavit from Ms. Wildheart, dated July 26, 2010 in which she states "I have written to Francis [Stone] many times" and in "[C]histmas 2009 I sent Francis a card," which she "later received the card back with a rejection slip telling me it was 'gang material." Doc. 82-1, p. 32. Thus, while Plaintiff did not reference a date for the correspondence from Ms. Wildheart, it is abundantly evident that the correspondence from Ms. Wildheart Plaintiff challenges was sent to him either during Christmas 2009 or at the latest a date *before* Ms. Wildheart's July 26, 2010 affidavit. Because the three additional grievances were not filed and resolved until August-September 2011, these grievances could not be considered properly filed because even if the grievances could be construed as grieving the correspondence from Ms. Wildheart, the grievances were filed more than a year too late.[5]

"Proper exhaustion demands compliance with an agency's deadlines and other

---

[5] Grievance case no. 11-6--27259, Doc. 76-9, Ex. J, does mention Ms. Wildheart and makes reference to the 2009 Christmas cards but does not satisfy Plaintiff's obligation to exhaust his claims because it was filed well past the 15 day time limit for grieving a claim like this.

*Case No: 1:11-cv-204-MP -GRJ*

critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v Ngo,* 548 U.S. 81, 90-91 (2006); *see also, Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005)(holding "that the PLRA's exhaustion requirement does not contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); *Harper v. Jenkin,* 179 F. 3d 1311, 1312 (11th Cir. 1999)(holding that prisoner who did not seek leave to file an out-of-time grievance had not exhausted his administrative remedies).

In sum, even though the three additional grievances were filed and resolved before the Second Amended Complaint was filed, the three grievances do not demonstrate proper exhaustion because they were filed and resolved more than a year after Plaintiff's mail was rejected.

Accordingly, while Plaintiff's claim regarding mail from Giovanni Rossetti has been fully exhausted, his claims regarding mail from Izzy Wildheart, Francis Huey, and Myles Neiman, as well as the 20-plus Christmas cards from 2009, are due to be dismissed for failure to exhaust administrative remedies.

**B.     *Summary judgement is proper regarding the rejection of Plaintiff's mail on October 29, 2009.***

Under *Turner v. Safley*, 482 U.S. 78 (1987), a prison regulation that infringes on an inmate's constitutional right is valid if it is reasonably related to a legitimate penological interest.  Four factors are to be considered in making this determination: (1) whether there is a reasonable connection between the regulation and the governmental

interest; (2) whether there are available alternate means for inmates to exercise the right at issue; (3) whether accommodating the right will impact guards, inmates, and allocation of prison resources; and (4) whether there are alternative regulations that would accommodate inmate rights while protecting the valid penological interest. *Id.* at 89-91.

As previously discussed by this Court in the report and recommendation adressing Defendant's first motion to dismiss, the Supreme Court has applied the *Turner* reasonableness standard to a prison policy of examining incoming mail, and approved of the "broad discretion" prison officials have to examine and exclude mail that could be detrimental to the security, order, and discipline of the institution or that might facilitate criminal activity. Doc. 40 at 8, citing *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989).

With regard to the first factor in the *Turner* analysis, gang suppression has been held as a legitimate penological interest and if a prison's policy of restricting Plaintiff's mail is reasonably related to that goal, the policy is valid and does not violate Plaintiff's First Amendment rights. *Koutnik v. Brown*, 189 F. App'x 546, 549 (7th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209 (2005) and *Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005)). *See also Harbin-Bey v. Rutter*, 420 F.3d 571, 578-79 (6th Cir. 2005) (finding a prison policy that "prohibits prisoners from receiving mail depicting gang symbols or signs" to be "reasonably related to the prison's goals of maintaining security and order"); *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998) ("Applying the principles of *Turner* and other relevant Supreme Court cases, we have ruled that the

interception of a defendant's prison correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had a "good" or "reasonable" cause to inspect the mail."). It is also reasonable for prison policy to afford prison officials the discretion to identify gangs whose correspondence they wish to limit, "given the dangerous environment in which they operate." *Koutnik*, 189 F. App'x at 549.

The unauthorized mail return receipt regarding the October 22, 2009 letter from Giovanni Rossetti, rejected on October 29, 2009, states that the letter contained Hell's Angels gang signs prohibited by department rules. Doc. 78-1. According to the FDOC, Hell's Angels "is considered an outlaw motorcycle gang, which is an organization where members use their motorcycle clubs as conduits for criminal activity." Doc. 76-1. As such, the FDOC has classified Hell's Angels as a Security Threat Group. *Id.* In efforts to reduce the presence of Security Threat Groups within an institution, the FDOC monitors inmate mail, specifically looking for signs, symbols, logos, and codes of gang-related activity. *Id.* The possession of items with gang sings poses a threat to the safety and security of the institution because they can be used to intimidate or coerce other inmates. Doc. 76-2 at 3. The association of an inmate to a gang can also promote retaliatory action from others who perceive themselves in opposition with that gang. *Id.* Further, allowing inmates to possess gang-related material does not promote rehabilitation. *Id.* Because this Court and others have previously held a prison's policy in examining and rejecting inmate mail containing gang-related material to be a legitimate penological interest, the first factor in the *Turner* reasonableness standard is satisfied. Doc. 40 at 8.

Regarding the second factor in the *Turner* analysis, "[w]here 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90. Plaintiff's mail from Giovanni Rossetti was rejected for containing gang signs, as the department prohibits incoming mail containing gang-related imagery. Docs. 76-1; 76-2; 78-1. Plaintiff, however, is not altogether prohibited from receiving mail from Giovanni Rossetti, so long as the correspondence complies with FDOC regulations. Additionally, FDOC regulations provide that "[i]nmates shall be responsible for informing correspondents of the regulations concerning incoming routine mail." Fla. Admin. Code. R. 33-210.101(4) (2009). Therefore, if Plaintiff informed Giovanni Rossetti about the prison's regulations regarding gang imagery and Rossetti refrained from using such symbols, the mail would not have been rejected, assuming it conformed with other requirements. Accordingly, there are alternatives for Plaintiff to exercise his right to receive mail.

The third factor of the *Turner* analysis concerns how accommodating Plaintiff's right to receive mail will impact guards, inmates, and allocation of prison resources. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Even allowing the temporary introduction of mail containing gang-related symbols would be damaging to the security and order of the institution. Doc. 72-2 at 4. As previously discussed, this is because the presence of gang-related material in an institution could intimidate or

coerce other inmates, promote retaliatory actions, and would be counter productive to the goal of rehabilitation. Doc. 76-2 at 3. Additionally, "other inmates could become aware of such possession and demand that the prohibitions on their gang-related signs, symbols, logos and imagery be lifted." Doc. 76-2 at 4. It follows that accommodation of Plaintiff's right would have a significant effect on the institution.

The final factor of the *Turner* analysis is whether alternative regulations exist to accommodate inmate rights while protecting the penological interest. There is no other way to reduce the presence of gang-related mail within the institution other than monitoring correspondences for gang signs and imagery. Surely, allowing these communications would defeat the penological interest of maintaining security and order within the prison.

Relying upon a copy of a July 21, 2010 affidavit from Giovanni Rossetti, Doc. 82-1, p. 78, Plaintiff argues that the Defendants had no right to withhold the letter because Mr. Rossetti is not a member of the Hell's Angels. Mr. Rossetti avers that he is "[n]ot a motorcycle club member [A]nd do not or have never written to Mr. Francis Stone in Lingo." *Id.* While viewing the evidence in the light most favorable to Plaintiff, as the Court must, may create some doubt as to whether Mr. Rossetti is a "member of a motorcycle club" there is no dispute that the October 22, 2009 letter contains coded gang information related to the Hells' Angels. As evidenced by the supplemental affidavit of Michelle Jordan – who supervises the Security Threat Group Unit for the Office of the Inspector General – the October 22, 2009 letter[6] contains a rhetorical

---

[6] Doc. 86, filed under seal.

Case No: 1:11-cv-204-MP -GRJ

question as to the elevation of Mayo, which presumably refers to Mayo Correctional. Doc. 88-1. Mayo correctional is located at 81 feet elevation. As Ms. Jordan attests, "81" is a reference to the Hells Angels Motorcycle Club ("HMAC"), as "H" is the 8th letter of the alphabet and "A" is the first letter of the alphabet, thus making 81 shorthand for HA or Hell's Angels. The October 22, 2009 letter also refers to t-shirts being sold by SOS. SOS refers to the Sons of Silence, another outlaw motorcycle gang identified as being allied against the HMAC. *Id.* ¶ 7. Plaintiff has not filed anything of record that controverts the sworn testimony of Ms. Jordan demonstrating that the October 22, 2009 letter from Giovanni Rossetti contains coded references to the Hell's Angels as well as to another outlaw motorcycle gang. Thus, even assuming Mr. Rossetti is not an official member of an outlaw motorcycle gang, the letter he sent to Plaintiff – without dispute – contains coded gang related references and, therefore, prison officials – and in particular Defendant Dewey – were justified in withholding the correspondence.

Accordingly, the rejection of the October 22, 2009 mail from Giovanni Rossetti on October 29, 2009 is constitutional under *Turner* and Defendants are therefore entitled to summary judgement.

### C.  *Plaintiff fails to state a claim against Defendants Crews, Humphries, and Tomlinson.*

Defendants also argue that Plaintiff has failed to state a claim against Defendants Humphries, Tomilson and Crews.[7] Although Plaintiff has named

---

[7] Defendants also allege that Plaintiff failed to state a claim against Defendant Crews, but because Crews has not been named as a defendant in Plaintiff's initial complaint or either of his amended complaints, the Court will not address whether Plaintiff failed to state a claim against Crews. Docs. 1 at 2; 49 at 2; 52 at 2.

Defendants Humphries, Tomilson and Crews in their official capacities as former wardens at MCI and as the Secretary of the Florida Department of Corrections, Plaintiff has not shown or alleged how they were personally involved in the processing and/or approval of his mail. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). The plaintiff must allege facts showing an affirmative causal connection between each specific defendant's conduct and the alleged deprivation of his constitutional rights. *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986). If a plaintiff cannot satisfy these requirements, or fails to provide factual allegations in support of his claim, the complaint is subject to dismissal. *Richardson,* 589 F.3d at 737-38.

"Without any evidence that the supervisory employee participated in or condoned the alleged deprivations, there can be no Section 1983 liability for the acts of the subordinates." *Geter v. Wille*, 846, F.2d 1352, 1355 (11th Cir. 1988). Additionally, "[m]erely signing a grievance does not create liability where the signer had no personal involvement in the alleged violation." *Cary v. McNeil*, 1:09CV18-MP/AK, 2009 WL 631230 (N.D. Fla. 2009). Plaintiff has not stated any facts which show that Defendants were personally involved in the rejection of his mail.

Therefore, in addition to the fact that Plaintiff has not established that the rejection of his mail was unconstitutional Defendants Humphries, Tomilson and

Crewsare also entitled to judgment in their favor because Plaintiff has not alleged nor come forward with any evidence demonstrating that they had any causal connection to the processing and/or approval of Plaintiff's mail, or the rejection of Plaintiff's mail, independent from denying Plaintiff's grievances.  Accordingly, Defendants Humphries, Tomilson and Crews are entitled to summary judgment in their favor.

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 76, should be **GRANTED** and that judgment should be entered in Defendants' favor.

IN CHAMBERS  this 15th day of September 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**